PER CURIAM.
Marshall Lee Gore appeals an order entered by the Eighth Judicial Circuit Court finding him competent to be executed.[1] For the reasons that follow, we affirm the circuit court’s order.
I. Background
On May 13, 2013, Governor Rick Scott signed a death warrant for Gore and set the execution for Monday, June 24, 2013. On May 18, 2013, Gore’s state counsel submitted a letter to the Governor, stating that there is reason to believe Gore is insane to be executed. Pursuant to section 922.07, Florida Statutes (2012), the Governor temporarily stayed Gore’s execution and appointed a commission of three psychiatrists to examine Gore. As a group, the psychiatrists conducted their examination on May 28, 2013, and concluded that Gore is sane to be executed. Thereafter, the Governor adopted the commission’s conclusion and lifted the stay.
Gore’s state counsel, Steven Hammer, did not file a motion for stay and hearing after the Governor’s determination of sanity to be executed pursuant to Florida Rules of Criminal Procedure 3.811 and 3.812. However, Gore’s federal counsel, Todd Scher, filed a petition for writ of habeas corpus in federal district court, which asserted that Gore is not competent to be executed. The federal district court dismissed the petition without prejudice because Gore had not exhausted the claim in state court. And the Eleventh Circuit Court of Appeals granted Gore’s motion for stay of execution while it considered *556 Gore’s appeal. On June 27, 2013, the Eleventh Circuit affirmed the district court’s dismissal without prejudice and lifted its previously entered stay. Thereafter, on June 28, 2013, the Governor rescheduled Gore’s execution for July 10, 2013.
On July 2, 2013, the circuit court granted federal counsel’s request to represent Gore in state court. Counsel then filed in the Eighth Judicial Circuit a motion for stay and hearing pursuant to rules 3.811 and 3.812. The circuit court stayed the execution and held an evidentiary hearing on July 15 and 16, 2013.
At the evidentiary hearing, Gore presented the testimony of one mental health expert, Dr. Jethro Toomer, who interviewed Gore on July 8, 2013. In response, the State presented the testimony of two of the three psychiatrists who were appointed by the Governor to examine Gore. The State also presented the testimony of four correctional officers who have observed and interacted with Gore over the years.
After an evidentiary hearing that spanned 1 and 1/2 days, the circuit court issued an order finding Gore sane to be executed and lifting its previously entered stay. In its order, the circuit court found that Gore is feigning delusional thoughts that his execution was scheduled in order to harvest his organs, a conspiracy theory purportedly involving China, the Illuminati, Satan worshippers, the national debt, and the Governor. In fact, the circuit court determined that “[tjhere is no credible evidence that Gore’s mental state is such that he believes he is being executed for any reason other than the murder of Ms. Novick.” In addition, the circuit court concluded that Gore is not suffering from a mental illness that would affect his rational understanding of his impending execution and the reason for it. The circuit court explained that it found the State mental health experts’ testimony “to be compelling and supported by the other evidence presented to the court in this case.”
Furthermore, the circuit court noted that it “was able to observe Gore’s demeanor and functioning first hand.” The circuit court stated that “[wjith one exception of using an inappropriate word, Gore was attentive, quiet, and engaged in the proceedings,” that “[h]e assisted counsel by talking with them and appeared at times to be writing notes or messages to them,” and that “he acted as normally as any other participant in the proceedings.”
II. Analysis
Gore alleges that the circuit court erred in finding him sane to be executed. However, because there is competent, substantial evidence supporting the determination, we affirm the circuit court. See Ferguson v. State, 112 So.3d 1154, 1156 (Fla.2012) (explaining standard of review).
“[T]he Eighth Amendment prohibits a State from carrying out a sentence of death upon a prisoner who is insane.” Ford v. Wainwright, 477 U.S. 399, 409-10, 106 S.Ct. 2595, 91 L.Ed.2d 335 (1986). “Under Ford, once a prisoner makes the requisite preliminary showing that his current mental state would bar his execution, the Eighth Amendment, applicable to the States under the Due Process Clause of the Fourteenth Amendment, entitles him to an adjudication to determine his condition.” Panetti v. Quarterman, 551 U.S. 930, 934-35, 127 S.Ct. 2842, 168 L.Ed.2d 662 (2007); see also Fla. R.Crim. P. 3.811(e).
To be sane for execution, the defendant must have a rational understanding of his impending execution and the reason for it. See Panetti, 551 U.S. at 959, 127 S.Ct. 2842 (“A prisoner’s awareness of the State’s rationale for an execution is not *557 the same as a rational understanding of it. Ford does not foreclose inquiry into the latter.”); Ferguson v. Fla. Dep’t of Corrs., 716 F.3d 1315, 1318 (11th Cir.2013) (“The Supreme Court has decided that a convicted murderer cannot be executed unless hé has a rational understanding of the fact that he is going to be put to death and of the reason for his execution”). In other words, a defendant must have more than a factual awareness of his impending execution and the State’s reason for it; he must have a rational understanding of the connection between his crime and impending execution. See Panetti, 551 U.S. at 959-60, 127 S.Ct. 2842; Ferguson, 716 F.3d at 1336 (explaining that Panetti “clarified that the requisite ‘awareness’ or ‘comprehension’ required by Ford was tantamount to a ‘rational understanding’ of the connection between a prisoner’s crimes and his execution”).
However, as the United States Supreme Court has explained, competency for execution does not mean that a defendant must be “normal” or “rational” as colloquially understood:
The mental state requisite for competence to suffer capital punishment neither presumes nor requires a person who would be considered “normal,” or even “rational,” in a layperson’s understanding of those terms. Someone who is condemned to death for an atrocious murder may be so callous as to be unrepentant; so self-centered and devoid of compassion as to lack all sense of guilt; so adept in transferring blame to others as to be considered, at least in the colloquial sense, to be out of touch with reality. Those states of mind, even if extreme compared to the criminal population at large, are not what petitioner contends lie at the threshold of a competence inquiry. The beginning of doubt about competence in a case like petitioner’s is not a misanthropic personality or an amoral character. It is a psychotic disorder.
Panetti, 551 U.S. at 959-60, 127 S.Ct. 2842.
In this case, the circuit court applied the correct legal standard and determined that Gore is sane to be executed. Specifically, the circuit court determined that “Gore is not mentally ill [and] that he has a rational understanding that he is being executed because he murdered Ms. Novick and will die as a result of that execution.” The circuit court concluded that “[t]here is no credible evidence that Gore’s mental state is such that he believes he is being executed for any reason other than the murder of Ms. Novick.” The circuit court explained that, although Dr. Toomer testified that Gore is not competent to be executed because of Gore’s statements regarding organ harvesting and Satan worshippers, Dr. Toomer’s testimony is not credible because Dr. Toomer had not conducted a complete evaluation, had not conducted a thorough review of Gore’s medical records, Department of Corrections records, or pro se filings, and had not interviewed anyone who had interacted regularly with Gore. Instead, Dr. Toomer relied heavily on Gore’s self reporting of his mental health history, a self report that is inconsistent with Gore’s records as well as the other evidence presented.
There is competent, substantial evidence to support the circuit court’s determination that Gore is sane to be executed. For example, Dr. Myers testified that Gore has the mental capacity to understand rationally that he is being executed and why. Both Dr. Myers and Dr. Wer-ner testified that Gore does not suffer from a mental illness of any kind, let alone a severe mental illness that is preventing him from rationally understanding the connection between his crime and punishment. Cf. Panetti, 551 U.S. at 960, 127 S.Ct. 2842 *558 (“Gross delusions stemming from a severe mental disorder may put an awareness of a link between a crime and its punishment in a context so far removed from reality that the punishment can serve no proper purpose.”). Instead, Dr. Myers and Dr. Wer-ner concluded that Gore has an antisocial personality disorder. Dr. Myers and Dr. Werner explained that Gore’s statements regarding organ harvesting and the Illuminati are a goal-oriented attempt by Gore to feign a delusion in order to avoid execution. Based upon their evaluation of Gore, their review of Gore’s records, their interviews with correctional officers, and Gore’s results on the Miller Forensic Assessment of Symptoms Test and the Mini-Mental State Examination-2, Dr. Myers and Dr. Werner concluded that Gore is malingering. This conclusion is consistent with the correctional officers’ testimony that Gore is manipulative of staff and only exhibits particular symptoms and unusual behavior when in the presence of certain individuals, such as Dr. Toomer, nurses, and the warden. Accordingly, the circuit court’s conclusion is supported by competent, substantial evidence.
III. Conclusion
For the foregoing reasons, we affirm the order of the circuit court finding Gore sane to be executed. No rehearing will be entertained by this Court, and the mandate shall issue immediately.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.