# Supreme Court of Florida

_____

No. SC2023-0819
_____

**DUANE EUGENE OWEN,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

June 9, 2023

PER CURIAM.

Duane Eugene Owen appeals the Eighth Judicial Circuit
Court's order finding him sane to be executed. *See* Fla. R. Crim. P.
3.812(e). We affirm.[1]

## I

On May 9, 2023, Governor Ron DeSantis signed a death
warrant scheduling Owen's execution for June 15, 2023.[2] Owen's

_____

1. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.

2. *See Owen v. State*, No. SC2023-0732, 2023 WL 3813490
(Fla. June 5, 2023), for a detailed factual and procedural account of
this case.

counsel then submitted a letter to the Governor stating that there are reasonable grounds to believe Owen is insane to be executed.

Following section 922.07, Florida Statutes (2022), the Governor appointed a commission of three psychiatrists to examine Owen and temporarily stayed Owen's execution. Fla. Exec. Order No. 23-106 (May 22, 2023). The psychiatrists conducted their examination and concluded that Owen understands the nature and effects of the death penalty and why it has been imposed on him. Soon after, the Governor adopted the commission's conclusion and lifted the temporary stay. Fla. Exec. Order No. 23-116 (May 25, 2023).

Owen's counsel then filed a motion for stay and hearing under Florida Rules of Criminal Procedure 3.811 and 3.812. On June 1 and 2, 2023, the circuit court held an evidentiary hearing about Owen's sanity to be executed, "that is, whether the prisoner lacks the mental capacity to understand the fact of the pending execution and the reason for it." Fla. R. Crim. P. 3.812(b). Owen presented the testimony of two mental health experts, Dr. Hyman Eisenstein and Ms. Lisa Wiley, and three of his present or former attorneys. He also provided affidavits from two additional mental health

experts: Drs. Faye Sultan and Frederick Berlin. In response, the State presented the testimony of the three psychiatrists appointed by the Governor to examine Owen: Drs. Tonia Werner, Wade Myers, and Emily Lazarou. The State also called four correctional officers who have observed Owen.

After considering all the evidence, the circuit court entered an order finding Owen sane to be executed, concluding that Owen failed to establish by clear and convincing evidence that he is insane to be executed.[3] The circuit court found that Owen does not currently have any mental illness and is feigning delusions to avoid the death penalty. It also determined that "[t]here is no credible evidence that he does not understand what is taking place and why it is taking place." Indeed, the circuit court concluded that Owen has a "rational understanding" of the fact of his execution and the reason for it. The circuit court explained that it found the State's mental health experts' testimony on Owen's current mental condition and competency to be executed "both credible and compelling," and "clearly and conclusively supported by the record."

_____

3. The circuit court also found that Owen would have failed to meet his burden under a preponderance of the evidence standard.

## II

## A

Owen alleges that the circuit court erred in finding him sane to be executed. We disagree. There is competent, substantial evidence supporting the circuit court's determination, *see Gore v. State*, 120 So. 3d 554, 557 (Fla. 2013), and so we affirm.

"[T]he Eighth Amendment's ban on cruel and unusual punishments precludes executing a prisoner who has 'lost his sanity' after sentencing." *Madison v. Alabama*, 139 S. Ct. 718, 722 (2019) (quoting *Ford v. Wainwright*, 477 U.S. 399, 406 (1986)). To be ineligible for execution under the Eighth Amendment, a prisoner's mental state must be "so distorted by a mental illness that he lacks a rational understanding of the State's rationale for his execution." *Id.* at 723 (cleaned up) (quoting *Panetti v. Quarterman*, 551 U.S. 930, 958-59 (2007)); *see Gore*, 120 So. 3d at 556. In other words, sanity for execution depends on whether a "prisoner's concept of reality" prevents him from grasping "the link between his crime and the punishment." *Panetti*, 551 U.S. at 958, 960. "What matters is whether a person has the 'rational understanding' " of why the State seeks to execute him, "not

- 4 -

whether he has any particular memory or any particular mental illness." *Madison*, 139 S. Ct. at 727.

Here, the circuit court applied the appropriate legal standard in concluding that Owen is sane to be executed. That is, it determined that Owen has a " 'rational understanding' of the fact of his pending execution and the reason for it," and is "aware that the State is executing him for the murders[4] he committed and that he will physically die as a result of the execution." *See id.* at 722, 727; *Ferguson v. State*, 112 So. 3d 1154, 1156 (Fla. 2012) ("[F]or insanity to bar execution, the defendant must lack the capacity to understand the nature of the death penalty and why it was imposed.") (quoting *Johnston v. State*, 27 So. 3d 11, 26 n.8 (Fla. 2010)). Indeed, the circuit court found it "inconceivable and completely unbelievable" that Owen has "any current mental illness" and determined that "Owen's purported delusion is demonstrably false."

---

4. Even though Owen has also been sentenced to death for the murder of Karen Slattery, his active death warrant pertains only to the murder of Georgianna Worden.

- 5 -

We find that the record contains competent, substantial evidence to support the circuit court's determination that Owen is sane to be executed. *See Gordon v. State*, 350 So. 3d 25, 35 (Fla. 2022) ("Evidence is competent if it is 'sufficiently relevant and material'; evidence is substantial if there is enough that 'a reasonable mind would accept [the evidence] as adequate to support a conclusion.' ") (alteration in original) (quoting *De Groot v. Sheffield*, 95 So. 2d 912, 916 (Fla. 1957)). For example, the three psychiatrists testifying on behalf of the State concluded "with a reasonable degree of medical certainty" that Owen does not have a mental illness, much less one preventing him from having a "factual and rational understanding of the death penalty and why the death penalty is being imposed on him." Based on their clinical evaluation of Owen, review of his medical and correctional records from 1986 to the present, and interviews with correctional employees, the State's three psychiatrists testified that Owen instead "met the diagnostic criteria for antisocial personality disorder" and "was malingering." And testimony from two of the correctional officers concerning the lack of positive symptoms in

- 6 -

Owen's recent behavior tracks the conclusion that Owen is feigning delusion to avoid the death penalty.

Accordingly, the circuit court's conclusion is supported by competent, substantial evidence.

We note that the circuit court considered the hearing testimony and related evidence for Owen unconvincing at best. For instance, although Owen's principal medical expert, Dr. Eisenstein, testified that Owen has schizophrenia and gender dysphoria, the trial court found his testimony "to be less credible than the other expert testimony and other evidence in the case" given Dr. Eisenstein's failure to consider several inconsistencies, including those between the facts from Owen's criminal convictions and his self-reported delusions.[5] The circuit court also assigned little weight to Owen's other testifying medical expert and former mental health counselor, Ms. Wiley, who stated that Owen had previously mentioned his gender dysphoria to her in 1996—thus corroborating

---

5. The circuit court also noted that Dr. Eisenstein characterized Owen as a "passive individual who possessed no violent tendencies"—despite knowing that Owen had committed several rapes, two murders, and an attempted murder.

one aspect of Owen's professed delusion.[6] The circuit court did so because Ms. Wiley also testified that she had never seen any evidence that Owen had schizophrenia and that Owen had never sought available accommodations for his gender dysphoria following his conviction on retrial for the murder of Karen Slattery. Otherwise, the circuit court found that Owen's testimonial evidence was "not particularly relevant or helpful to the issue before the court in this hearing."

**B**

Owen also claims that the circuit court abused its discretion in denying his motion for a continuance based on the unavailability of Drs. Sultan and Berlin to testify live at the evidentiary hearing. Again, we disagree.

The circuit court acted reasonably in light of the undisputed facts of record. *See Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980) ("If reasonable men could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable

---

6. Additionally, Owen presented, and the circuit court considered, affidavits from two other mental health experts who could not attend the hearing and testify. *See infra* Section II–B.

and there can be no finding of an abuse of discretion."). Although Drs. Sultan and Berlin could not testify at the evidentiary hearing, Owen provided, and the circuit court considered, their affidavits. Moreover, both parties agreed that the testimony of both unavailable witnesses would have been consistent with their affidavits. And no proffer was made of any other evidence relevant to Owen's insanity to be executed that either would have presented if available to testify live. *See Gore v. State,* 599 So. 2d 978, 984-85 (Fla. 1992) (holding that the trial court did not abuse its discretion in denying a continuance to accommodate a witness because the substance of her testimony was presented through deposition).

Even so, Owen argues that the circuit court committed reversible error by not continuing the evidentiary hearing, pointing to our decision in *Provenzano v. State,* 750 So. 2d 597, 601 (Fla. 1999). There, we held that the circuit court abused its discretion by denying the defendant's request to continue a rule 3.812 hearing based on the unavailability of the defendant's mental health expert, Dr. Patricia Fleming. Notably, Dr. Fleming was the defendant's "key witness" and had just completed a psychological evaluation to determine the defendant's then-current mental status and

- 9 -

competency to be executed. *Id.* at 604-05 (Lewis, J., specially concurring).

But here, unlike in *Provenzano,* Owen still presented live testimony of his principal witness, Dr. Eisenstein, who has recently examined Owen twice in May 2023 and opined on Owen's current mental health and competency to be executed. What's more, neither of Owen's unavailable mental health experts has seen or had contact with Owen since 1999. So Drs. Sultan and Berlin could have testified only to what they observed in the 1990s concerning Owen's mental state related to his retrial for the murder of Karen Slattery—and these observations, a matter of record, were already outlined in the doctors' affidavits.

In the end, the issue of Owen's sanity to be executed was "resolved in the crucible of an adversarial proceeding." *Provenzano v. State,* 751 So. 2d 37, 40 (Fla. 1999). The circuit court held a hearing according to Florida Rule of Criminal Procedure 3.812 that afforded Owen's counsel the "opportunity to submit 'evidence and argument . . . including expert psychiatric evidence that may differ from the State's own psychiatric examination.'" *Panetti,* 551 U.S. at 950 (quoting *Ford,* 477 U.S. at 427 (Powell, J., concurring in part

- 10 -

and concurring in the judgment)).  It then properly considered all the evidence, and made a determination based on the appropriate standard under Florida Rule of Criminal Procedure 3.812(e).  *See Ferguson v. Sec'y, Fla. Dep't of Corr.*, 716 F.3d 1315, 1339, 1339 n.6 (11th Cir. 2013) (concluding that Florida's procedures for determining a prisoner's sanity to be executed, codified under Florida Rules of Criminal Procedure 3.811 and 3.812, "did satisfy the minimum due process requirements identified in *Ford* and *Panetti*").

The circuit court did not abuse its discretion in denying Owen's request for a continuance under these circumstances.

### III

We affirm the circuit court's order finding Owen sane to be executed.  No rehearing will be entertained by this Court, and the mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
LABARGA, J., recused.

An Appeal from the Circuit Court in and for Bradford County,
James M. Colaw, Judge
Case No.  042023CA000264CAAXMX

- 11 -

Eric Pinkard, Capital Collateral Regional Counsel, Lisa M. Fusaro, Assistant Capital Collateral Regional Counsel, Morgan P. Laurienzo, Assistant Capital Collateral Regional Counsel, and Joshua P. Chaykin, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, Celia Terenzio, Chief Assistant Attorney General, West Palm Beach, Florida, and Leslie T. Campbell, Assistant Attorney General, West Palm Beach, Florida,

    for Appellee