# Supreme Court of Florida

_____

No. SC2025-0590
_____

**JEFFREY G. HUTCHINSON,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

April 30, 2025

PER CURIAM.

For the murders he committed in 1998, Jeffrey Glenn Hutchinson is scheduled to be executed on May 1, 2025, at 6:00 p.m.  Since Hutchinson's warrant issued on March 31, 2025, he has litigated numerous issues, including his competency to be executed.  Hutchinson now appeals the circuit court's order finding him competent to be executed under state and federal law.  Carrying out our mandatory-review function,[1] we affirm, and also deny Hutchinson's motion for stay.

---

1.  _See_ art. V, § 3(b)(1), Fla. Const.

## I

We have previously discussed at length the horrific crimes that Hutchinson committed and for which he has been sentenced to die. We will mention just a few facts to give background and context to our discussion below.

After drinking at a local bar, Hutchinson drove to a home in Crestview, Florida, where he lived with his then-girlfriend Renee and her three young children. Armed with a pump-action shotgun, he broke down the front door and proceeded to the bedroom where he shot and killed Renee and two of her children—seven-year-old Amanda and four-year-old Logan. He then fatally shot Geoffrey, Renee's nine-year-old son—once in the chest and once in the head.

Hutchinson called 911 and told the dispatcher that he had just shot his family. Later in the call, he added something about "some guys" being present at the home, implying that they were responsible for the shootings.

Law enforcement arrested Hutchinson and took him to a nearby police station. During the ensuing interview with officers, Hutchinson expounded on his theory of innocence. In part, Hutchinson said that the intruders wore black masks and were

likely from Quantico. And he implored the interviewing officers to find the perpetrators.

Ultimately, the State charged Hutchinson with four counts of first-degree murder and sought the death penalty. At trial, the State introduced overwhelming evidence of Hutchinson's guilt. Multiple witnesses said that Hutchinson's voice was that of the 911 caller; witnesses indicated that blood from the victims, as well as body tissue from Geoffrey, was on Hutchinson at the time of arrest; and witnesses testified that the shotgun belonged to Hutchinson and that Hutchinson had gun residue on his hands. Following presentation of this evidence and more, the jury found Hutchinson guilty as charged on all four murder counts.

With his guilt established, Hutchinson waived a jury for the penalty phase. After hearing aggravating and mitigating evidence, the trial court sentenced Hutchinson to death for the murders of the three children, and to life for Renee's murder.

Hutchinson appealed, but we affirmed. He soon began collateral attacks on his convictions and death sentences. As part of certain claims attacking his guilt, he argued complete innocence of the crimes. Of note, he (with the assistance of counsel) has

asserted numerous theories of innocence. One version was that government-connected individuals from Quantico were the alleged killers. Other times, Hutchinson said that the killers were two (former) friends: Billy Taylor and Joel Adams. And at other times still, he alleged that the killer was Renee's ex-husband. But like the rest of his postconviction claims, these innocence-related claims were rejected by all courts to have considered them.

Turning to recent events, Hutchinson filed two more successive postconviction motions in 2025. The circuit court denied each of those motions, prompting two appeals. While these appeals were pending, Hutchinson sent a letter to the Governor asking that he be declared "insane" under section 922.07, Florida Statutes (2024). As required by that statute, *see* § 922.07(1), the Governor stayed the execution and appointed a three-person commission to evaluate Hutchinson's sanity—that is, whether he "understands the nature and effect of the death penalty and why it is to be imposed upon him." *Id.* The commission consisted of three psychiatrists: Dr. Tonia Werner, Dr. Wade Myers, and Dr. Emily Lazarou. Based on interviews with prison staff, a review of voluminous records, and a 90-minute in-person evaluation of

- 4 -

Hutchinson, the commission found that Hutchinson satisfied the statute's definition of sanity. Agreeing with the commission's report, the Governor entered an executive order finding Hutchinson sane to be executed. Consistent with that finding, the Governor also lifted the stay.

Hutchinson then filed a motion in circuit court, asking to be declared "insane" under Florida Rules of Criminal Procedure 3.811 and 3.812—a term meaning that the death-sentenced prisoner lacks understanding of the fact of the forthcoming execution and the State's reasons for the punishment. Fla. R. Crim. P. 3.811(b); 3.812(b). Hutchinson also relied on U.S. Supreme Court precedent, which holds that the Eighth Amendment to the U.S. Constitution bars the execution of those who are insane or incompetent at the time such punishment is to be inflicted.[2]

The circuit court held a hearing at which both sides presented evidence on the issue of Hutchinson's competency and sanity. For his part, Hutchinson called nine witnesses, including past and

---

2. *See, e.g., Ford v. Wainwright,* 477 U.S. 399, 410 (1986) (plurality opinion) ("The Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane.").

present members of his legal team and two experts to support his theory that delusions (namely, that the government was conspiring against him to keep him quiet and that he viewed the execution as the State's ultimate way of enforcing that conspiracy) prevented him from rationally understanding the State's true reasons for the punishment. As for the first category of witnesses, they indicated that Hutchinson has long maintained a sincere belief that the murders were the product of the government's efforts to silence him. Relying in part on these observations, Hutchinson's experts opined that his mental disorders—including Delusional Disorder—rendered him unable to rationally understand the State's reasons for executing him.

The State countered this evidence with two experts of its own, Dr. Werner and Dr. Myers. Both found that Hutchinson did not suffer from Delusional Disorder or any other mental illness for that matter. And in the final analysis, both concluded that Hutchinson was, in fact, competent to be executed. Among other things, the experts noted that Hutchinson's detailed story of innocence had evolved throughout the years and was not a subject of Hutchinson's

regular conversation with the prison staff. Indeed, three members of that staff echoed this point.

Ultimately, the trial court credited the State's witnesses and found Hutchinson competent for purposes of execution.[3] Hutchinson now challenges the order making this finding. He also seeks reversal of other orders denying his request for a continuance or stay and declining to compel additional discovery.

II

The Eighth Amendment forbids the infliction of "cruel and unusual punishment." As interpreted by the U.S. Supreme Court, this amendment prohibits the execution of those who have "lost [their] sanity" or (using more modern terms) have become "incompetent to be executed." *Ford*, 477 U.S. at 406 (framed in terms of "sanity"); *Dunn v. Madison*, 583 U.S. 10, 13 (2017) (framed in terms of "mental competence").

This prohibition, the Supreme Court tells us, means that it is unconstitutional for a state to execute someone "whose mental

---

3. In denying the requested relief, the circuit court found that Hutchinson could not prevail under the clear-and-convincing standard or the preponderance-of-the-evidence standard.

illness makes him unable to 'reach a rational understanding of the reason for [his] execution.' " *Madison v. Alabama*, 586 U.S. 265, 274 (2019) (alteration in original) (quoting *Panetti v. Quarterman*, 551 U.S. 930, 958 (2007)). Put differently, a state may not execute a prisoner whose "concept of reality is so impaired that he cannot grasp the execution's meaning and purpose or the link between his crime and its punishment." *Id.* at 269 (cleaned up). In applying this standard, the focus is on the prisoner's "understanding of why the State seeks capital punishment for a crime"—looking "beyond any given diagnosis to [the] downstream consequence[s]" of the mental illness. *Id.* at 276, 279.

In line with this precedent, our procedural rules also set forth a competency standard and prohibit the execution of a death-sentenced prisoner who cannot understand "the fact" of the pending execution "and the reason for it." Fla. R. Crim. P. 3.811(b); 3.812(b). When a prisoner meets this standard, the court must order stay relief. Fla. R. Crim. P. 3.812(e).

Hutchinson argues that the circuit court erred in finding him competent to be executed. We disagree. Our review of any legal issues is de novo. *See Davidson v. State*, 323 So. 3d 1241, 1247 n.8 (Fla. 2021). If no legal error is shown, we will affirm where there is "competent, substantial evidence supporting the circuit court's determination." *Owen v. State*, 363 So. 3d 1035, 1038 (Fla. 2023) (citing *Gore v. State*, 120 So. 3d 554, 557 (Fla. 2013)).

To begin, Hutchinson has failed to demonstrate any legal error in the challenged order. The court stated and applied the correct legal standards in determining that Hutchinson was sane or competent to be executed. In doing so, the court cited our recent decision in *Owens* and indirectly quoted principles discussed above from the Supreme Court's decisions in *Panetti* and *Madison*. Additionally, the court did not employ the restrictive procedures found inadequate in *Ford*.[4] Nor did the court deem Hutchinson's

---

4. Rather, the court allowed Hutchinson to present his evidence on the subject of competency and to cross-examine the State's witnesses. The statute disapproved of in *Ford* did not give a death-sentenced prisoner such procedural rights, and it entrusted

claimed delusions to be irrelevant to its competency determination—something that *Panetti* disapproved of. *See Panetti*, 551 U.S. at 960 (rejecting "a strict test for competency that treats delusional beliefs as irrelevant once the prisoner is aware the State has identified the link between his crime and the punishment to be inflicted").

We now turn to the record to determine if the court's findings are supported by competent, substantial evidence. Here, the court found that (1) Hutchinson understands that he is to be executed for the children's murders and that he will die if the execution is successfully carried out; (2) Hutchinson does not have any current mental health issues, including Delusional Disorder; (3) Hutchinson provided no evidence that even if he did have Delusional Disorder, he could not understand the link between the murders and the impending execution; (4) Hutchinson has anti-social and narcissistic traits; and (5) Hutchinson has raised his government-conspiracy theory in an effort to avoid responsibility for the murders and the death penalty.

the executive branch alone with the sanity determination. *Ford*, 477 U.S. at 413-16.

The record supports these findings. At the hearing, the State's experts opined that Hutchinson rationally understands that Renee and her three children were murdered and that he will die as a result of the execution, should it go forward. Indeed, Hutchinson's own experts conceded as much. Additionally, an expert for the State noted that although Hutchinson does not accept the State's reasons for executing him, he does have the capacity to appreciate why the State would punish (by death) the person or persons who murdered the three children.

The State's experts also testified that while Hutchinson had certain anti-social and narcissistic traits, they saw no indications of current mental illness or signs of Delusional Disorder. This was consistent with the Department of Corrections' records (which noted no such diagnosis or anything comparable to it),[5] Hutchinson's detailed—and evolving—descriptions of innocence, and Hutchinson's interactions with various prison staff. Nevertheless, even assuming that Hutchinson had delusions, both experts opined

_____

5. Indeed, Dr. Barry Crown, one of Hutchinson's witnesses, had not diagnosed Hutchinson with Delusional Disorder prior to this proceeding, even having examined him multiple times in the past.

that such a disorder did not interfere with Hutchinson's ability to rationally understand the reasons for his execution.

Moreover, according to the experts, Hutchinson's steadfast commitment to the government-conspiracy theory was nothing more than an "alibi" that he "stuck with" despite overwhelming evidence to the contrary. In disagreeing with Hutchinson's experts, an expert for the State underscored that the length of time that an individual adheres to a particular alibi is not indicative of mental illness.

Though Hutchinson acknowledges the existence of this evidence, he asks us to instead focus on the favorable evidence he presented at the hearing—essentially urging us to credit that evidence (though the trial court did not). But our job is not to reassess the credibility of witnesses or reweigh the evidence. *Lambrix v. State*, 39 So. 3d 260, 268 (Fla. 2010) ("Appellate courts do not 'reweigh the evidence or second-guess the circuit court's findings as to the credibility of witnesses.' " (quoting *Nixon v. State*, 2 So. 3d 137, 141 (Fla. 2009))). Rather, we limit our review in this respect to whether the circuit court's determinations are supported

by legally sufficient evidence. *Calhoun v. State*, 376 So. 3d 583, 586 (Fla. 2023) (a legal sufficiency standard). We find that they are.

In so holding, we again underscore what the circuit court also noted: What matters is whether a person has the 'rational understanding' of why the State seeks to execute him, not whether he has any particular memory or any particular mental illness. (Cleaned up.) As clearly articulated by the circuit court, "[t]here is no credible evidence that in his current mental state Mr. Hutchinson believes himself unable to die or that he is being executed for any reason other than the murders he was convicted of by a jury of his peers."

Hutchinson's steadfast refusal to take responsibility for his actions aside, it is clear from the record that Hutchinson understands and fully comprehends the following: Renee and her three children were brutally murdered; the evidence against him was great; a jury of his peers found him guilty; he was sentenced to death in a court of law; the sentence of death will be executed upon him *for those crimes*; and he will die as a result of the execution. *See Madison*, 586 U.S. at 275; *Ferguson v. State,* 112 So. 3d 1154, 1156 (Fla. 2012) ("[F]or insanity to bar execution, the defendant

must lack the capacity to understand the nature of the death penalty and why it was imposed.").

## B

Hutchinson also argues that the circuit court erred in denying his motions to continue the evidentiary hearing, for a stay, and for additional discovery. Such rulings are committed to the sound discretion of the court. *Owen*, 363 So. 3d at 1039 (continuances); *Hutchinson v. State*, No. SC2025-0517, 2025 WL 1198037, at *3 (Fla. Apr. 25, 2025) (post-warrant discovery); *Barwick v. Governor of Florida*, 66 F.4th 896, 902 (11th Cir. 2023) (stays). Having carefully reviewed the record (including the motions, rulings, and transcripts) as well as the briefing here, we believe that reasonable judges might well agree with the court's decisions not to postpone the hearing, stay the execution, or compel the requested discovery.[6] Although

---

6. We note the following supportive facts: (1) due to the professionalism and diligence of the presiding judge, court staff, and the parties—the evidentiary hearing was completed in one calendar day despite collateral counsel's initial concerns that it would take more time; (2) all of the projected defense witnesses testified fully at the hearing, in spite of its expedited nature; and (3) on the day of the evidentiary hearing, collateral counsel did not renew any objection to the timing of the hearing or indicate that any witness was unavailable or ill-prepared.

Hutchinson points to certain things that he deems less than ideal, he does not claim that further evidentiary development would have altered the trial court's competency ruling. Nor, for that matter, would additional evidence alter our conclusion on whether legally *sufficient* evidence was introduced. We find no abuse of discretion in the circuit court's denial of these motions.

IV

Based on our analysis above, we affirm the challenged orders. In light of our affirmance, we decline to stay Hutchinson's execution. No motion for rehearing will be considered, and the mandate shall issue immediately.

It is so ordered.

MUÑIZ, C.J., and CANADY, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.
LABARGA, J., dissents with an opinion.

LABARGA, J., dissenting.

As I explained in my recent dissent, "I fully acknowledge the horrific facts of this death warrant case." *Hutchinson v. State*, SC2025-0517, 2025 WL 1198037, at *7 (Fla. Apr. 25, 2025) (Labarga, J., dissenting). Moreover, I join the majority in recognizing "the professionalism and diligence of the presiding

judge, court staff, and the parties" that aided in conducting the evidentiary hearing in the circuit court.  Majority op. at 14 note 6.

And yet, this death warrant case has had a procedural path unlike any in recent history.  It is because of this that I continue to believe that a stay would be beneficial to the consideration of the issues raised.  As such, I dissent.

An Appeal from the Circuit Court in and for Bradford County,
    James Matthew Colaw, Judge
      Case No. 042025CA000163CAAXMX

Dawn B. Macready, Capital Collateral Regional Counsel, Chelsea Shirley, Assistant Capital Collateral Regional Counsel, Lisa M. Fusaro, Assistant Capital Collateral Regional Counsel, and Alicia Hampton, Assistant Capital Collateral Regional Counsel, Northern Region, Tallahassee, Florida,

    for Appellant

James Uthmeier, Attorney General, Charmaine M. Millsaps, Senior Assistant Attorney General, and Janine D. Robinson, Assistant Attorney General, Tallahassee, Florida,

    for Appellee